# EXHIBIT B

# In the Matter of:

# Tronox Limited/Cristal USA

*December 20, 2017*
*Pretrial*

**Condensed Transcript with Word Index**



For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Tronox Limited/Cristal USA                                    12/20/2017

---

5

1    JUDGE CHAPPELL: Those old jokes never get old.
2    MR. REILLY: I know. You keep laughing. I
3  keep doing them, Your Honor.
4    MR. WILLIAMS: And with me, Your Honor, I have
5  my partner Karen DeSantis and also the Deputy General
6  Counsel of Tronox, Steven Kaye.
7    JUDGE CHAPPELL: Okay.
8    MR. COOPER: Good afternoon, Your Honor. James
9  Cooper from Arnold & Porter Kaye Scholer on behalf of
10  Cristal, and with me is --
11    JUDGE CHAPPELL: When you say Cristal, you mean
12  both entities have been sued?
13    MR. COOPER: Yes, the Cristal entities. There
14  are three of them.
15    JUDGE CHAPPELL: Have the Respondents worked
16  out who is going to do your summary? Are you going to
17  split it or is one of you going to handle it or --
18    MR. WILLIAMS: It will be all me, Your Honor.
19    JUDGE CHAPPELL: Okay, all right.
20    I wasn't sure from what I'd read if an
21  ancillary federal action has been filed. I would like
22  to hear the nature and status of that at this time.
23    MR. VOTE: Yes, Your Honor. We have not filed
24  a federal court action in this case, and the reason for
25  that is the parties are not in a position to close the

---

6

1  case. As Your Honor is aware --
2    JUDGE CHAPPELL: Close the merger?
3    MR. VOTE: Correct. Excuse me. Close the
4  merger.
5    JUDGE CHAPPELL: You are always in a position
6  to close the case.
7    MR. VOTE: That's exactly right.
8    The parties are not currently in a position to
9  close the merger, and the reason for that is because
10  they have ongoing regulatory reviews in multiple other
11  jurisdictions.
12    The European Commission this morning issued a
13  press release that said that they are initiating a
14  second phase investigation, which they have until May
15  15th to make a decision on.
16    JUDGE CHAPPELL: And you think what Europe does
17  is relevant to us?
18    MR. VOTE: No, Your Honor. I think our
19  position is that when we go and ask the federal court
20  for emergency relief, such as a TRO or a PI, we are
21  doing that because we need to protect this proceeding,
22  which we consider to be the merits proceeding and the
23  proceeding where we actually determine the legality of
24  the merger. We are not aware that the parties are
25  going to close, and so we don't see that there's any

---

7

1  threat to this proceeding or any need to start a
2  parallel proceeding.
3    JUDGE CHAPPELL: All right. Is that it?
4    MR. VOTE: That's it.
5    JUDGE CHAPPELL: Anything you want to add to
6  that?
7    MR. WILLIAMS: From our side, Your Honor, I
8  would say that this does raise some issues --
9    JUDGE CHAPPELL: What's "this"? "This"?
10    MR. WILLIAMS: This, the fact that there is no
11  ancillary federal proceeding right now.
12    JUDGE CHAPPELL: Right.
13    MR. WILLIAMS: We have advised Complaint
14  Counsel and we had advised the FTC early on in this
15  process that there is an expiration date for this deal
16  of May 21st, and I understand that Your Honor moves
17  these things along, but we also have an opening trial
18  date of May 8, with de novo review to the entire
19  Commission.
20    JUDGE CHAPPELL: It's not Your Honor that moves
21  these things along. It's a ridiculous Commission rule
22  that pushes nonconsummated mergers along much sooner
23  than they should be. It's based on history that's
24  incorrect, but go ahead.
25    MR. WILLIAMS: I'm sure Your Honor will enforce

---

8

1  that, and we will all abide by it, but I don't know
2  that it's going to move fast enough in this case. So
3  we are waiting for these ancillary proceedings, and I
4  didn't know that they would be held up pending Europe,
5  that's a new concept to me, but in all events, we are
6  going forward in full force in front of Your Honor, of
7  course.
8    JUDGE CHAPPELL: Do you have your tickets to
9  Brussels just in case?
10    MR. WILLIAMS: I always have tickets to
11  Brussels, Your Honor.
12    JUDGE CHAPPELL: All right. Here is my take on
13  this. I have been doing this way too many years. I
14  have never seen a merger case go to trial, when it's
15  nonconsummated, once we get a ruling on an injunction,
16  and what that means is it's a tremendous waste of
17  resources for the taxpayers of America and for
18  Respondents, for attorneys' fees, to try to get this
19  case to completion when, number one, at this time, I'm
20  finding out we don't even know if they can merge based
21  on regulatory action.
22    Number two -- and this is my experience -- if
23  an injunction is granted -- and this goes back to my
24  days of actually being on your side of the table and
25  working on mergers -- you generally walk away when any

---

29

1  similarly held, on summary judgment, that "The record
2  contains ample evidence for concluding that the
3  Defendants agreed to raise prices and shared
4  commercially sensitive information [] to facilitate
5  their conspiracy."
6         JUDGE CHAPPELL:  Who were the defendants in
7  that action?
8         MR. VOTE:  So Cristal's predecessor company I
9  believe was a defendant in that case.  Tronox, I
10  believe, was not, because at the time they were in
11  bankruptcy proceedings.  Although I think they were
12  considered in that case to be one of the potentially --
13  one of the potential members of the conspiracy, they
14  were acknowledged to be part of an oligopoly of five
15  major players, but they were not named in the lawsuit
16  because they were in bankruptcy, Your Honor.
17         JUDGE CHAPPELL:  I can see Dupont is a
18  defendant in the first case, so they are a competitor
19  to Respondents?
20         MR. VOTE:  That's right.  Dupont spun off their
21  TiO2 business.  It's now called Chemours.
22         JUDGE CHAPPELL:  That's Chemours.
23         MR. VOTE:  Exactly.
24         So we have this history of either tacit or
25  explicit coordination in this industry, and little, if

30

1  anything, has changed, Your Honor.  The evidence will
2  show that the industry is just as vulnerable to
3  coordination today as it was just a few years ago.  The
4  merger is only going to make that worse, Your Honor.
5         As courts have long recognized, the fewer
6  competitors there are in a market, the easier it is for
7  them to coordinate their pricing.  And by the way, this
8  merger is also going to increase transparency in this
9  market where there is already a great deal of
10  transparency, which also will make coordination easier.
11  Coordination will lead to more price discipline and,
12  thus, higher prices for TiO2 customers, as well as
13  consumers buying a bucket of paint.
14         Unilateral effects.  This is theory number two,
15  Your Honor.  The merger is also going to result in
16  reduced output.  Tronox has a history of taking supply
17  out of the market.  It has closed plants.  It has
18  temporarily shut down lines.  It has reduced its
19  utilization rates.  And Tronox has taken these actions
20  for the purposes of driving industry prices even
21  higher.
22         By doubling Tronox's market share, the merger
23  significantly increases Tronox's incentive to reduce
24  output, and that is because, as the Merger Guidelines
25  explain, the merger can provide the merged firm a

31

1  larger base of sales on which to benefit from the
2  resulting price rise.
3         We intend to put on economic evidence, Your
4  Honor, that the merger will further encourage Tronox to
5  unilaterally reduce output, and that will result in
6  substantially higher prices for chloride and TiO2.
7         JUDGE CHAPPELL:  Those three bullets at the
8  top, plant closures, shutdowns, are you saying those
9  are not things that any business may do to make a
10  profit?
11         MR. VOTE:  There is nothing inappropriate -- we
12  are not alleging that the -- that the Respondents have
13  done anything inappropriate, Your Honor.  We are simply
14  acknowledging that there's a strong incentive to reduce
15  output in order to press prices higher, and that can be
16  a completely legitimate reason for a Section 7 theory.
17         JUDGE CHAPPELL:  You mentioned bankruptcy
18  earlier.  Do you have a timeline on that?  Was that
19  recently?  Is that ten years ago?
20         MR. VOTE:  Your Honor, I would suggest that the
21  Respondents would be better situated to answer that
22  question.  I think it was some time ago, and, frankly,
23  I don't know exactly what the basis for that bankruptcy
24  proceeding was.
25         JUDGE CHAPPELL:  But you know whether or not

32

1  they're in bankruptcy at this time.
2         MR. VOTE:  They are not, Your Honor.  And, in
3  fact, we will also put on evidence that while this
4  business is cyclical -- and that means that sometimes
5  you make a lot of money and sometimes you make less
6  money, it goes up and down -- this in the long term is
7  a very profitable business, and, you know, these are
8  not businesses that are about to go out of business or
9  go back into bankruptcy, Your Honor.
10         JUDGE CHAPPELL:  Right.  Let me expound on one
11  thing I said earlier in the beginning.  We were talking
12  about how this case is going to proceed and why.  It is
13  true we could have a trial on the merits and we could
14  start next week, but to work through the system, this
15  takes months.  Preliminary injunction, usually a week,
16  maybe two, and you can have a ruling, and, you know, if
17  there's an injunction, that could end it.
18         So even though we could proceed headstrong and
19  knock this thing out and even move the date up, it's
20  just -- it's still -- it just takes so much more time
21  for this system to work, not that one's right or wrong
22  or one's better than the other, but the PI system is
23  much more efficient to get to a conclusion of whether
24  some district court judge thinks that the merger should
25  be blocked.

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

77

1    MR. WILLIAMS:  We're marching on, Your Honor.
2    Thank you for your time.
3    JUDGE CHAPPELL:  All right.  Thank you.
4    Anything further?
5    MR. VOTE:  Your Honor, I know this is not the
6    time for argument, but if I could make just two very
7    quick points, and really, the most important one to
8    point out --
9    JUDGE CHAPPELL:  I didn't say yes yet.  Go
10    ahead.
11    MR. VOTE:  Thank you, Your Honor.  My apologies
12    for not waiting.
13    Opposing counsel just suggested that a cynic
14    might think that the Government's trying to run out the
15    clock.  We are doing the exact opposite, Your Honor.
16    The reason we're here is because we believe strongly
17    that this deal is going to harm consumers, and that's
18    why we have started the clock to try to get to Your
19    Honor and a decision as soon as possible.  That's the
20    last thing we have in mind.
21    JUDGE CHAPPELL:  But everybody involved in
22    these proceedings knows that there's no way to get this
23    through the system before the merger would be -- the
24    merger would be consummated.  I mean, it just -- it's
25    impossible to have a trial, get a decision out.  It's

78

1    never going to happen.  It's a worthy goal, but it's
2    unrealistic.
3    MR. VOTE:  I understand the point you're
4    making, Your Honor, but I would also point out that
5    it's also not uncommon for parties who have, you know,
6    purported drop-dead dates for their merger to move
7    them, sometimes repeatedly, in order to account for
8    even a PI trial.  This is not something that is
9    uncommon at all.  Folks have schedules for their
10    mergers, and they move them if the trial doesn't fit
11    in.  I have no idea what the situation for these
12    merging parties is and whether they will be able to do
13    that, but that's something that happens all the time.
14    JUDGE CHAPPELL:  Were there two, two things?  I
15    thought you said there were two things.
16    MR. VOTE:  You're right, Your Honor, and I'm
17    glad you reminded me.  This is a factual issue, and I
18    want to make sure we're all on the same page.  One of
19    the things you heard opposing counsel talk about, which
20    I did not talk about in any great detail, is this
21    slagger that's represented in Jazan.  This is an asset
22    that they are going to start up and they say will
23    increase output.
24    Complaint Counsel's understanding up until
25    today is that that asset is not part of this

79

1    transaction, that there is no agreement for the parties
2    to sell that asset, to buy that asset, and so that's
3    not something we have addressed.
4    JUDGE CHAPPELL:  Are you calling BS on that
5    point?  Is that what you're doing?
6    MR. VOTE:  I'm asking -- I'm pointing out that
7    our understanding is it's not part of the deal.  I was
8    wondering if Complaint Counsel [sic] has an update for
9    us on that, if it is now part of the deal and something
10    we need to consider, Your Honor.
11    JUDGE CHAPPELL:  Did we all learn something
12    today?
13    MR. WILLIAMS:  I've learned a lot so far, Your
14    Honor, but if I can talk about this, there is -- this
15    isn't part of the actual merger agreement itself, but
16    there are a series of agreements in place; first for
17    Tronox to provide feedstock supply to the slagger, to
18    provide technical know-how to the slagger, and then
19    also an options contract so they can take the
20    production from the slagger with an option to buy the
21    slagger itself once certain performance targets are
22    hit.
23    JUDGE CHAPPELL:  So the use of the slagger may
24    not be expressly in the deal, but it's a part of the
25    deal.  The use of it is included in the deal?

80

1    MR. WILLIAMS:  The -- I don't know whether it's
2    in the contract itself or whether it's in a side
3    contract, and I'll find that out -- I apologize for not
4    having that offhand, Your Honor -- but it's an
5    important contemplated part of this deal that we bring
6    that slagger up to speed.  We enter into these options
7    and supply contracts where we're propping this slagger
8    up with an option to buy at the end of the day once
9    it's hit the performance targets, Your Honor.
10    JUDGE CHAPPELL:  Well, these facts will be
11    hashed out probably in the district court, but if not,
12    they will be hashed out here.
13    MR. WILLIAMS:  Thank you, Your Honor.
14    JUDGE CHAPPELL:  Anything further?
15    MR. VOTE:  No, Your Honor.
16    MR. WILLIAMS:  Nothing, Your Honor.
17    JUDGE CHAPPELL:  Hearing nothing further, until
18    we meet again, we are adjourned.
19    (Whereupon, at 3:25 p.m., the hearing was
20    adjourned.)
21
22
23
24
25

20 (Pages 77 to 80)