**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**TRONOX LIMITED** )<br>)<br>)<br>)<br>**NATIONAL INDUSTRIALIZATION** )<br>**COMPANY** )<br>)<br>)<br>**NATIONAL TITANIUM DIOXIDE** )<br>**COMPANY LIMITED** )<br>)<br>and )<br>)<br>**CRISTAL USA INC.** )<br>)<br>Defendants. )<br>)<br>)<br>) | **CIVIL ACTION**<br>**1:18-cv-01622 (TNM)** |

**TRONOX'S RESPONSE TO PLAINTIFF'S NOTICE OF
SUPPLEMENTAL AUTHORITY**

Plaintiff Federal Trade Commission ("FTC") calls to the Court's attention *FTC v. Wilhelm Wilhelmsen Holding ASA, et al.*, No. 18-cv-00414 (D.D.C. July 21, 2018). That decision, however, does not support a preliminary injunction here. Rather, the marked differences between *Wilhelmsen* and this case only underscore that the FTC cannot meet its burden to prove that injunctive relief would be in the public interest. *See* 15 U.S.C. § 53(b).

*Wilhelmsen* addressed a proposed merger of two companies that were "each other's closest and only realistic competition," Slip op. at 1, in a "cluster market" of products that are not

1

interchangeable but are "frequently sold together," *id.* at 19.  The Court also found "that there are no reasonable substitutes for BWT or CWT products and services."  *Id.* at 16. Needless to say, none of that is relevant here; even on the FTC's gerrymandered account, there are at least five competitors (in truth, there are many more), and the FTC does not advance a "cluster market" theory.  *Wilhelmsen* was essentially a merger to monopoly of the most significant players in the relevant industry, leaving the next closest competitor with only 4% of the market.  By contrast, Chemours is actually the largest TiO2 producer in the North American market, and even post-merger, two other significant players will remain.  Moreover, for most uses, chloride-process TiO2 and sulfate-process TiO2 are interchangeable, thus preventing price increases.  *See, e.g.*, Hill, Tr. 2024:2-9 ("technically, I believe that [chloride-process and sulfate-process] could be substituted in almost every coatings use"); Hill, Tr. 2018:15-18 ( "with respect to plastics customers whose testimony [Dr. Hill] reviewed, [he] believe[s] that all of them say they use both chloride and sulfate");  Hill, Tr. 1908:6-12 (Hill testimony that a loss of only 15.4% of current purchased of chloride TiO2 in North America—from either switching to sulfate-process, purchasing chloride-process abroad through arbitrage, or stopping or reduction of TiO2 use of any kind—would render a 10% price increase unprofitable).  Notably, the FTC does not claim that *Wilhelmsen*'s facts are similar to those here.

Wilhelmsen also does not support the FTC's legal arguments.  To begin, the FTC advanced different theories of harm in these two cases.  In *Wilhelmsen*, the FTC argued that harm would result in the form of price increases after the loss of significant head-to-head competition between Wilhelsen and its target (and competitor), Drew Marine.  The FTC has never ventured such a theory in this case, arguing instead that the Tronox-Cristal transaction will lead to unilateral output reduction and coordinated effects.  Additionally, the FTC, observes that *Wilhelmsen* addresses the

"standard for a preliminary injunction under Section 13(b)."  But *Wilhelmsen* says nothing new—it quotes essentially the same mix of binding and non-binding authority that the FTC has already cited.  *Wilhelmsen* also does not undermine Tronox's argument that the Court has discretionary authority to issue a "hold separate order."  *FTC v. Weyerhaeuser*, 665 F.2d 1072, 1085-87 (D.C. Cir. 1981).  Unlike the merger in this case, where even the FTC concedes that the alleged competitive overlap is at most a small part of the transaction, *see, e.g.*, FTC Pre-trial Brief, FTC Dkt. 9377, at 53 (stating that the North American facilities "are at the core of the anticompetitive effects"); FTC Closing Statements, DDC Tr. 883:14-20 ("[W]e are focused on North America . . . [and] Ashtabula does make the Cristal North American business in some sense."), in *Wilhelmsen*, the two parties overlapped with each other "on a global scale."  Slip. op. at 1; *see also id.* at 12.

The FTC notes that *Wilhelmsen* addresses "market definition," which, the FTC argues, "is focused on demand substitution, not potential supply responses."  Yet *Wilhelmsen* does not suggest that that the predictable response of competing suppliers to a price increase is irrelevant to market definition—which would conflict with basic economics.  At most, *Wilhelmsen* says that the fact that competitors could "easily reorganize" to create a competing product in response to a merger "relates to ease of entry into the market, not to current market conditions."  Slip op. at 33 n.6.  But in this case, the evidence shows that if prices were to increase in the United States, *current* competitors would promptly increase supply—there is no need for any "reorganization."

Next, the FTC observes that *Wilhelmsen* cites "ordinary course documents and customer testimony."  But Tronox has never suggested that such materials are irrelevant.  Instead, in this case, those materials should be given little evidentiary weight because the FTC has cherry-picked and misread documents, *see, e.g.*, *United States v. AT & T Inc.*, 310 F. Supp. 3d 161, 204-210 (D.D.C. 2018) (giving little weight to "ordinary course documents" in an analogous context), and

the FTC's customer testimony is also cherry-picked and biased, *see, e.g.*, Transcript of Preliminary

Injunction Hearing, 798:22 (Aug. 9, 2018) ("THE COURT: PPG, their stake is obvious to me.").

The FTC also cannot rely on expert analysis where that analysis is flawed.  The *Wilhelmsen* court,

for instance, was not presented with Dr. Hill's "Capacity Closure Model."

The FTC next asserts that *Wilhelmsen* demonstrates "defendants' burden of production in

asserting entry and expansion … and efficiencies."  The FTC cannot dispute, however, that it bears

the burden of proving every element of its claim, including that the public interest requires

enjoining this global merger in all respects and that a lesser remedy would not suffice.  Nothing in

*Wilhelmsen* relieves the FTC of its statutory burden of proof, nor does *Wilhelmsen* undermine the

abundant evidence presented that this merger will expand output and benefit consumers.

Finally, the FTC observes that the *Wilhelmsen* court "weigh[ed] public and private

equities."  Yet *Wilhelmsen* is distinguishable on this issue too; most importantly, unlike in this

case, the FTC in *Wilhelmsen* established a likelihood of success and the court concluded that

"Defendants' claimed efficiencies cannot be independently verified."  Slip op. at 61.  Neither is

true here.  The *Wilhelmsen* court also was not confronted with deliberately dilatory behavior by

the FTC, *see id.* at 8 (explaining that the FTC sought an injunction before the administrative trial,

not afterwards, as in this case), which also strongly counsels against an equitable remedy.

Dated: August 31, 2018

Submitted By:

*/s/ Michael F. Williams, P.C.*
Michael F. Williams, P.C. (D.C. Bar No. 486190)
Karen McCartan DeSantis (D.C. Bar No. 420443)
Aaron Nielson (D.C. Bar No. 996486)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Suite 1200
Washington, D.C. 20005
(202) 879-5000
(202) 879-5200 (facsimile)

michael.williams@kirkland.com
karen.desantis@kirkland.com
aaron.nielson@kirkland.com

**ATTORNEYS FOR TRONOX LIMITED**